UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

SANDRA S.,[1]

    Plaintiff,

v.

                      1:20-CV-1706 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

───────────────────────────────

## DECISION AND ORDER

Plaintiff Sandra S. brought this action under the Social Security Act (the "Act"), seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 12. The Commissioner responded and cross moved for judgment on the pleadings. Dkt. 14. Plaintiff replied. Dkt. 15.

For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

───────────

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

Plaintiff applied for benefits on August 6, 2018, alleging disability beginning on December 8, 2015. Tr. 165.[2] Plaintiff's application was initially denied by the Social Security Administration on September 9, 2018. Tr. 63. Plaintiff then filed a written request for a hearing on October 3, 2018, Tr. 76-77, which took place before an Administrative Law Judge ("ALJ") on January 13, 2020, Tr. 29-53. The ALJ issued a written decision on January 29, 2020, denying Plaintiff's claim. Tr. 15-24. The Appeals Council denied Plaintiff's request for review on October 29, 2020. Tr. 1-5. Plaintiff then commenced this action. Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

---

[2] All references to the administrative transcript (Dkt. 10) are denoted "Tr. ____." Page numbers for documents contained in the transcript correspond to the pagination located in the lower right corner of each page.

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.   Disability Determination

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). If there are no severe impairments, the

claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ determines the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(a)(4)(iv), (e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the claimant's collective impairments. *See id.* § 404.1545. The ALJ then determines if the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform past work, he or she is not disabled and the analysis ends. *Id.* §§ 404.1520(a)(4)(iv), (f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.*

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); *see also*

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I.   The ALJ's decision

The ALJ first found that Plaintiff had last met the Act's insured status requirements on June 30, 2016, the date last insured.[3] Tr. 17. The ALJ then proceeded through the sequential evaluation process discussed above.

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date on December 8, 2015. *Id.* At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, lumbar and thoracic spine degenerative disc disease, lumbago, status-post right hip replacement, and left hip osteoarthritis. *Id.* The ALJ also found that Plaintiff had

---

[3] Plaintiff applied for Disability Insurance Benefits ("DIB"). She last met the Act's insured status requirements on June 30, 2016. Tr. 172; *see also Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019), as amended (April 30, 2019) ("To be entitled to [DIB], claimants must demonstrate that they became disabled while they met the Act's insured status requirements") (citing 42 U.S.C. § 423(a)(1)(A),(c)(1)). Accordingly, Plaintiff had to establish disability before the date last insured on June 30, 2016, to be eligible for DIB. *See Monette v. Astrue*, 269 F. App'x 109, 111 (2d Cir. 2008) ("[The plaintiff's] disability insurance expired on June 30, 1997. Thus, [the plaintiff] would be eligible to receive disability insurance benefits if, but only if, he can demonstrate disability[] . . . before June 30, 1997.") (citing 42 U.S.C. § 423(c)).

non-severe depressive disorder and "status-post cerebral vascular accident in 2013." Tr. 18.

At step three, the ALJ found that none of Plaintiff's limitations met or equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 19. In making this determination, the ALJ considered the following Listings: 1.02 Major dysfunction of a joint, 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, 1.04 Disorders of the spine, and 11.04 Vascular insult to the brain. Tr. 19-20.

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff can "frequently climb stairs, ramps, ropes, ladders, and scaffolds; and can frequently stoop, balance, crouch, kneel, and crawl." Tr. 20.

At the final step, the ALJ found that Plaintiff had no past relevant work, Tr. 22, but that Plaintiff could perform the requirements of other occupations in the national economy, Tr. 22-23. As such, the ALJ concluded that Plaintiff is not disabled. Tr. 23-24.

## II. Analysis

Plaintiff makes three arguments in support of her motion. Dkt. 12-1. First, Plaintiff argues that the ALJ improperly substituted his lay judgment for that of a medical expert. *Id.* at 13. Second, Plaintiff argues that the ALJ "violated SSR 96-9p by failing to consider the use [of] a cane." *Id.* at 17. Third, Plaintiff argues that

the ALJ did not consider whether Plaintiff's hip impairments met Listings 1.02 and 1.03 at step three. *Id.* at 18.

### A. The ALJ properly determined that Plaintiff did not have a severe impairment meeting the Act's durational requirement.[4]

Plaintiff alleged disability based on several back conditions and hip replacement, Tr. 176, requiring her to use "a cane or walker to ambulate" for "most of the time" during the relevant period. Dkt. 12-1, at 16; *see also id.* at 18 ("During the time period adjudicated, which is only seven months, [Plaintiff] was prescribed a cane for approximately 4 ½ [sic] months and a walker for three [months]."). On December 8, 2015, the alleged onset of disability, Plaintiff was diagnosed with intervertebral disc disorder and osteoarthritis in her right hip. Tr. 640. On May 31, 2016, Plaintiff underwent a total right hip replacement. Tr. 348. Plaintiff used a cane and a walker to ambulate as she recovered from surgery. Tr. 292, 296, 438. By August 19, 2016, Plaintiff had discontinued the use of an assistive device and was "ambulating without supportive device or brace." Tr. 440.

The ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 8, 2015, the alleged onset date, through June 30, 2016, the date last insured." Tr. 23. The ALJ found that the medical evidence did not show Plaintiff had "any specific functional limitations

---

[4] In order to prove disability, the claimant must show the existence of a severe impairment "which can be expected to result in death[,] or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); 42 U.S.C. § 423(d)(1)(A). This is referred to by the Social Security Administration as the Act's "duration requirement." 20 C.F.R. § 404.1509.

7

prior to [the] date last insured." Tr. 22. The ALJ considered the two medical opinions in the record, the August 8, 2019 report of John Schwab, D.O., and the September 18, 2018 joint report of B. Stouter, M.D., and L. Hoffman, Ph.D., and found those reports "unpersuasive." *Id.* The ALJ noted that Dr. Stouter and Dr. Hoffman concluded that there was "insufficient evidence to establish the presence of severe impairments through the date last insured." *Id.* (citing Tr. 58, 59, 60). The ALJ concluded that, because Plaintiff's insured status expired less than seven months after her disability allegedly began, "the date last insured" and the "duration" of Plaintiff's impairments were insurmountable "hurdle[s]" to her claim. Tr. 22.

Plaintiff argues that the ALJ failed to make "a specific finding" about Plaintiff's "use of a medically required cane or other hand-held assistive device" in violation of SSR 96-9p. Dkt. 12-1, at 17. Plaintiff's argument is without merit.

For an ALJ to find that a claimant's use of a cane or walker is "medically required" under SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996), "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing." There also must be medical documentation "describing the circumstances for which [an assistive device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.*

8

Here, the medical record does not establish the need for use of a cane. In December 2015, when Plaintiff's disability allegedly began, Plaintiff was "ambulating without supportive device or brace." Tr. 433. Some of Plaintiff's treatment records list an assistive device under Plaintiff's medications, Tr. 507, 516, 649, and treatment notes show that Plaintiff used an assistive device while recovering from hip surgery performed in May 2016, Tr. 287, 292, 296, 303, 315. Those reports, however, do nothing more "than simply observe that [Plaintiff] used a cane." *Leda I. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 27, 32 (W.D.N.Y. June 24, 2021) (citation omitted).

There is no medical evidence establishing the need for an assistive device, let alone "describing the circumstances for which [an assistive device] is needed." *See* SSR 96-9p. In fact, Dr. Schwab noted in his report that Plaintiff "[u]ses no assistive device," Tr. 970, and opined that Plaintiff has "[n]o restrictions," Tr. 971. Thus, "Plaintiff has failed to establish that [an] assistive device was 'medically required' under the explicit terms of SSR 96-9p." *Smith v. Colvin*, No. 12-CV-1098 MAT, 2015 WL 3970932, at *9 (W.D.N.Y. June 30, 2015) (citing *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002)); *see also Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits") (citing *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir.2012)).

9

Similarly, Plaintiff's step three argument is without merit because the evidence does not establish that her "hip injury and hip replacement surgeries . . . meet all the required elements of Listings 1.02(A)[5] and 1.03.[6]" Dkt. 12-1, at 22.

The medical evidence does not show that Plaintiff's hip pain prior to surgery "result[ed] in inability to ambulate effectively," or that after Plaintiff's hip replacement a "return to effective ambulation did not occur[] . . . within 12 months." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2, § 1.02, 1.03 (2020). In fact, two and a half months after Plaintiff's hip replacement, she was walking with a normal gait and without the use of an assistive device. Tr. 440 (Plaintiff "walks without a limp" and "is ambulating without supportive device or brace"). Because the evidence does not show that Plaintiff's impairments met the requirements of the Listings, the ALJ's "failure to properly consider" Listings 1.02 and 1.03 at step three, Dkt. 12-1, at 18, was not prejudicial to Plaintiff. *See Johnson*, 817 F.2d at 986 ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

**B. The ALJ did not substitute his lay judgment in evaluating the medical evidence.**

Plaintiff argues that the ALJ "rejected" the only two medical opinions in the record and, therefore, the ALJ "had no medical authority to rely upon" to formulate the RFC. Dkt. 12-1, at 15. Plaintiff argues that "the record reveals [she] was much more limited [than] the ALJ accounted for." *Id.* Plaintiff's argument is without merit.

The ALJ found the two medical opinions in the record "unpersuasive." Tr. 22. The ALJ rejected the joint conclusion of Dr. Stouter and Dr. Hoffman that "there is insufficient evidence to establish the presence of severe impairments" because that finding was "inconsistent with evidence received at the hearing level." *Id.*; *see also* Tr. 21 ("[C]laimant submitted further evidence from 2017 through 2019," including Exhibits 5F, 9F, 10F, and 11F in the administrative transcript, "which post-dates her date last insured."). The ALJ found that the August 8, 2019 opinion of Dr. Schwab "was made well after the date last insured and thus [was] irrelevant in determining the claimant's functional status during the pertinent period." Tr. 22. Plaintiff agreed with that conclusion, stating that the ALJ "correctly found [Dr. Schwab's] opinion to be unpersuasive since it was made well after the date last insured and was thus irrelevant." Dkt. 12-1, at 15. Notably, the September 18, 2018 joint opinion of Dr. Stouter and Dr. Hoffman was also made after the date last insured.

---

[5] Major dysfunction of a joint:
An impairment "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
With:
   A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.
20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2, § 1.02 (2020).

[6] "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."
20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2, § 1.03 (2020).

11

An ALJ is not required to adopt the findings of any one medical source in formulating the RFC. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ((citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (An ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.")). That is especially so for claims, like Plaintiff's, filed after March 27, 2017, where the applicable regulations do not require the ALJ to defer or even "give any specific evidentiary weight" to any medical source opinion. *See* 20 C.F.R. § 404.1520c (applicable rules "[f]or claims filed . . . on or after March 27, 2017").

Moreover, an ALJ need not recite every piece of evidence that supports his decision, so long as the record "permits [the reviewing court] to glean the rationale of [the] ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Where, as here, "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity[,]" the ALJ does not need to rely on medical opinion evidence to formulate the RFC. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

Because the ALJ "applied the appropriate legal standards" to determine disability, and because his determination was "supported by substantial evidence in the administrative record," remand is not warranted. *See Sizer v. Colvin*, 592 F. App'x 46, 47 (2d Cir. 2015).

12

## CONCLUSION

For the above reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 14) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 12). The Clerk of the Court will close this case.

SO ORDERED.

Dated: September 21, 2022
Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE